## UNITED STATES EXPRESS COMPANY *v.* LONG.

### Opinion delivered October 21, 1912.

1. CARRIER—LOSS IN TRANSPORTATION—LIABILITY.—A shipper can not recover of a carrier for loss in weight of ginseng and other roots shipped over the carrier's route where the shipper testifies that he was not very careful about getting the exact weight of the packages before shipping them, and the consignee did not weigh them when received, since the loss in weight, if any, might have occurred after the articles were delivered to the consignee. (Page 135.)

2. EVIDENCE—RES INTER ALIOS ACTA.—In an action against a carrier for loss in weight of articles shipped, letters which passed between the plaintiff and his consignees are inadmissible in evidence. (Page 136.)

Appeal from Madison Circuit Court; *J. S. Maples,* Judge; reversed.

STATEMENT BY THE COURT.

The appellee alleged that on the 30th day of June, 1910, he delivered to the appellant at Pettigrew, Arkansas, two sacks of ginseng roots of the weight of twenty pounds and one sack of golden seal of the weight of eight pounds for transportation to New York City, consigned to himself. He alleged that appellant had failed to deliver the shipment to James Rowland & Company, to whom he ordered the shipment delivered, and that by reason of the failure he had been damaged in the sum of $150.

The appellant denied that appellee had delivered to it the roots alleged of the weight as alleged, but averred that appellee had delivered to appellant on the 30th day of June, 1910, three packages consigned to himself at New York City, and that appellant had no way of knowing that the appellee desired said sacks to be delivered to James Rowland & Company until it received a letter from appellee to that effect, dated at Huntsville, Arkansas, August 15, 1910; that appellant, immediately upon receipt of the letter, delivered all of

said sacks or packages to James Rowland & Company; that James Rowland & Company receipted for the sacks, showing the same in good condition. · Appellant denied damages.

The appellee testified substantially as follows: That on the 30th day of June he shipped three bags of roots, weighing twenty-eight pounds, through the appellant company, consigned to himself at New York City; that there were nineteen or twenty pounds of ginseng roots in two bags and six or seven pounds of golden seal and one and one-half or two pounds of seneca roots in the other bag. The roots were packed in light cloth material sacks and well sewed up. On the 15th of August, 1910, he wrote the appellant company stating that he had expressed the roots, as indicated, on June 30, 1910, and that he had sent James Rowland & Company an order for the roots some time ago and directed the appellant company to deliver these roots to James Rowland & Company, New York City. He stated that he received from Rowland & Company a statement showing that it had sold for the account of appellee ten pounds of seneca roots for $4.00; eight and one-fourth pounds of ginseng roots for $49.50; and five and one-half pounds of golden seal roots for $9.63, which, after a deduction of $5.46 for express and commissions, left a balance of $57.67, for which amount Rowland & Company sent him a draft, which he returned to them. He stated that he was not very careful about getting the exact weight of the three packages before he expressed them.

On behalf of the appellee, the shipping clerk of James Rowland & Company, New York City, testified that on August 20, 1910, he received from the appellant the roots in controversy. He didn't weigh the roots. There were three bags of them. He received them August 20, 1910, and gave a receipt for them. He didn't know the price per pound of roots of the class received on the 1st day of July, nor on the 20th day of August. He stated that the sacks were in good condition when received to all outward appearances; that they were packed in bags of thin cloth material.

James Rowland, a witness for appellee, testified that James Rowland & Company received the shipment of roots through the appellant company on August 20, 1910. He didn't know the number of pounds of the different kinds of

roots that were received at the time the same were received. He only signed for them as so many sacks of roots. There were three sacks or bags; they were all sewed up tight, and the roots were perfectly dry. He stated that the express company failed to find the three sacks at its office on his first inquiry as to the shipment. His company then wrote the appellee that the roots could not be found, and asked that a tracer be sent after them, and some days after that the roots were delivered to James Rowland & Company. The witness was unable to state the specific date that he called on appellant for the delivery of the roots. He stated that he didn't remember the date of the order from appellee directing the appellant to deliver the roots to James Rowland & Company; stated that James Rowland & Company received $63.13 for the roots when sold, and, after deducting the expressage and commissions, sent appellee a draft for the balance of $57.67, which he returned. The witness was unable to state the market value of roots of the kind mentioned on the first day of July or on August 20.

Witness Van Ronk, of the firm of James Rowland & Company, testified that he sold the roots in controversy. The shipment of roots seemed to be in good condition when received. The bags were all sewed up. His company didn't weigh the roots when they were received. He signed for them as so many packages. He sold the roots for the prices as stated in the testimony of the former witness. He didn't know the market value of roots of the kind mentioned on the first day of July or the 20th of August, 1910. The roots were received on the 20th and sold on the 22d of August, 1910. The three packages turned over to his company had the name of T. G. Long written or stamped or printed on each of the packages at the time they were received by his company. The only record the company made of the receipt of the goods was the following: "Aug. 20, 1910. From T. G. Long, Huntsville, Ark., *via* U. S. Ex. 3 bags herbs."

Over the objection of the appellant, the above witness exhibited three letters which the court permitted to be read in evidence. These were letters written by James Rowland & Company to appellee. The first was dated August 11, 1910, and was as follows:

"New York, August 11, 1910.

"T. G. Long, Esqr.,  Huntsville, Arkansas.

"Dear Sir:  Your letter of the 8th inst. received.  When we received your  first letter, we asked the  express company  to make delivery, but they  had  been unable to find the  three sacks.  Think it would  be well for you  to have the agent at your station send tracer through, ordering delivery to us.

"Yours truly,

(Signed)  "James Rowland & Co,"

It is unnecessary to set out the other letters.  It was shown on behalf of appellant that it received three packages of roots, shipped by the appellee, at its office in New York on July 5, 1910.  The shipment was consigned to T. G. Long, New York City.  Appellant delivered the three packages to James Rowland & Company, 84 Hudson St., New York, August 20, 1910, on written order from the shipper, T. G. Long.  The receipt for same was introduced, as follows:

"Messenger's freight 286.　　　　Way-Bill No. 37

August 20, 1910.

From New York　(O. H. Dept.) N. Y.

To 84 Hudson St. (55 W. 23rd St.)

(Weight—28 pounds—3 bags).

Consignee

James Rowland & Co.

38448,  Shipper,

Pettigrew, Ark.

Our charges $2.30.  Received from United States Express Co. in good order and condition the above mentioned articles.

"Dated August 20, 1910.

"H. Viebrock."

The witness further testified that there was no call for these goods to his knowledge until the express company  made the delivery after receiving instructions from the shipper. He says that they were delivered at New York, and were ready for delivery on July 5, and they were not delivered because the party to whom they were consigned, towit, the appellee himself, had no local address, and was unknown to the express company.

The court instructed the jury, to which no exceptions were reserved. The jury returned a verdict in favor of the appellee for $132.03, and from a judgment in favor of appellee for such sum this appeal has been duly prosecuted.

*W. N. Ivie,* for appellant.

1. The express company delivered the sacks as soon as they could be delivered, and there is no evidence to support the verdict. A new trial will be granted where the verdict is directly against the evidence. 21 Ark. 468; 24 *Id.* 224. So, where the verdict shocks one's sense of justice, a new trial should be granted. 10 Ark. 638; *Ib.* 491; 26 *Id.* 309; 39 *Id.* 491.

2. Where illegal evidence is permitted and the other evidence is not sufficient to sustain the verdict, the judgment will be reversed. 14 Ark. 502.

*Appellee, pro se.*

Judgments are not reversed for mere errors in admitting evidence. 20 Ark. 216; 56 *Id.* 35. The cause was fairly submitted under proper instructions. 47 Ark. 469; 49 *Id.* 122. Where there is any legal evidence, this court will not reverse. 46 Ark. 142; 47 *Id.* 196.

WOOD, J., (after stating the facts). 1. The testimony is not sufficient to sustain the verdict. The complaint shows that appellee sues for failure and neglect "to deliver said shipment of roots to the consignee James Rowland & Company," and "that by reason of the failure of the defendant to deliver said shipment of roots he has been damaged in the sum of $150."

The proof on behalf of the appellee himself shows that the appellant did deliver the roots in controversy to James Rowland & Company on August 20, 1910. One of the members of the firm of James Rowland & Company testified as follows: "I received these roots on August 20, 1910. I gave a receipt for these three bags, but did not weigh them. The sacks were in good order when received, to all outward appearances. They were packed in thin bags of cloth material."

The appellee himself testified that the roots were packed in light cloth material sacks and well sewed up when he shipped them. He also testified: "I was not very careful about getting the exact weight of these three packages before I expressed them."

The waybill in evidence showed that there were three bags of roots, and that they were billed as twenty-eight pounds. The waybill was numbered 37, and the express number of the shipment to identify it was 38,448. This is precisely the character of the shipment that was delivered by order of the appellee to James Rowland & Company, as shown by the latter's receipt.

The appellee therefore fails to show any cause of action for nondelivery of the goods by the appellant.

The testimony on behalf of the appellee showed that Rowland & Company received the bags as of the weight of twenty-eight pounds, the same weight he shipped them under. Their agent who received the bags showed in his testimony that he gave the receipt for the bags as weighing twenty-eight pounds, as shown by the waybill, but that he did not weigh them. There is no testimony therefore to show that, if these bags weighed twenty-eight pounds when they were delivered to the appellant at Pettigrew, as claimed by appellee, they did not weigh twenty-eight pounds when they were delivered through appellee's order to Rowland & Company in New York City. It should be taken, under the uncontroverted proof here, that the appellant company delivered the shipment just as it had received it from the appellee, in good condition, to appellee's order in New York City. If there was really a loss in the weight of these roots, as appellee claims, his testimony wholly fails to show that that loss occurred by reason of the failure of the appellant to deliver. The loss, if any, under the undisputed facts of this record, must be held to have occurred after the goods were delivered to Rowland & Company in New York City, and not before.

The evidence shows that the goods were delivered to Rowland & Company on August 20, and that they were not sold until August 22. The loss of the roots, if any, might have taken place, so far as the proof shows to the contrary, between the time that Rowland & Company received them and the time they sold them. The burden was on the appellee, and he has failed to trace the loss of these roots to the appellant. The jury must not be allowed to speculate as to when and where the loss occurred. It was the duty of the appellee to prove by facts and circumstances that the loss, if any, occurred through the failure of the appellant to deliver, as alleged in the complaint.

2. The conclusion we have reached makes it necessary to determine whether the introduction of the letters, exhibits "B, C & D," was prejudicial error, and in view of a new trial it is only necessary to state that these letters were incompetent. 14 Enc. of Ev. 718.

For the error in overruling appellant's motion for a new trial the judgment is reversed, and the case remanded for a new trial.